GREGORY T. MORGAN, Plaintiff-Appellee, v. THE ILLINOIS RACING BOARD *et al.*, Defendants-Appellants.

Third District    No. 3—86—0839

Opinion filed May 15, 1987.—Rehearing denied June 19, 1987.

Neil F. Hartigan, Attorney General, of Springfield (G. Michael Taylor, Assistant Attorney General, of counsel), for appellant Illinois Racing Board.

Michael V. Frierdich, of Frierdich, Lopinot, Buser & Morris, of Columbia (Arthur W. Morris, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Defendants, the Illinois Racing Board (Board) and the steward's office of Quad City Downs, Inc. (stewards), appeal from the judgment of the circuit court of Rock Island County which enjoined defendants from enforcing an order of exclusion against plaintiff, Gregory T. Morgan. Defendants filed this interlocutory appeal, pursuant to Supreme Court Rule 307(c) (87 Ill. 2d R. 307(c)), and contend that Morgan's pleadings and proof were insufficient to justify the injunction.

Morgan is a trainer and driver of racehorses. On July 20, 1986, the stewards convened a hearing based on allegations that Morgan had raced a horse following illegal and unreported cryosurgery. The stewards issued a ruling the same day suspending Morgan's license for one year and imposing a $500 civil penalty. During the suspension period, the ruling excluded Morgan from all racetracks under the jurisdiction of the Board. Morgan filed a complaint for a temporary restraining order (TRO) and a preliminary injunction on July 31, 1986, pending administrative review of the suspension by the Board. The court granted the TRO the same day and set a date for a hearing to determine whether the injunction should issue.

The defendants filed a motion to dissolve the TRO and dismiss the complaint for injunctive relief on the basis that the TRO was inappropriate in that it purported to last in excess of 10 days, that Morgan had not exhausted his administrative remedies, and that the petition failed to allege sufficient facts to support a TRO or a preliminary injunction. The motion and the hearing on the injunction were held on August 12, 1986.

On December 1, 1986, the circuit court granted the preliminary injunction, which was to remain in effect "until the plaintiff has exhausted all remedies under the Administrative Review Act and until the final rulings are made therein."

■ Although not raised by Morgan on appeal, we must first address the propriety of the summary suspension of an occupational licensee's license in the sport of horse racing. Morgan did not contest the authority of the defendants to issue such summary suspensions, but rather only propounds that he is entitled to an injunction against enforcement of the suspension until such time as the matter is fully resolved. In this case, by virtue of the circuit court's order, that includes all judicial review and resolution of the issues presented by this case. We agree with the courts which have addressed this issue and similarly hold that the State's interest in preserving the integrity of the sport and in protecting the public from harm authorizes such suspensions. See *Phillips v. Graham* (1981), 86 Ill. 2d 274, 427 N.E.2d

550; *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 415 N.E.2d 1290.

■ The problem in this case arises because the cases cited by both Morgan and the Board do not directly guide us to a decision in this case and appear somewhat inconsistent in and of themselves. Both parties cite to the case of *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 415 N.E.2d 1290. While *Kurtzworth* concludes that summary interim suspension procedures are authorized by the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1985, ch. 8, par. 37—1 *et seq.*) and do not violate due process concerns, the court's initial determination in that case is inconsistent with that reasoning. The *Kurtzworth* court affirmed the circuit court's issuance of preliminary injunctions which prevented enforcement of the suspensions until such time as a final decision was reached by the Illinois Racing Board. We fail to follow the logic which on one hand would sanction the summary suspension while on the other hand provides an avenue to effectively circumvent that process.

The *Kurtzworth* court addressed the issue of whether the circuit courts are permitted to intervene to supply the provisional or ancillary relief of issuing an injunction when they are not asked to rule on the merits of any cause of action. Acknowledging that the power to do so, while not absolute, does exist, the court failed to point to any of the specifics in any of the five cases consolidated in that appeal which justified the issuance of the injunctions. Therefore, *Kurtzworth* does not provide any support for the proposition that the circuit court properly issued the injunction in this case.

This does not mean that the courts are without power to issue an injunction in specific cases. However, if an injunction is the appropriate provisional remedy, the proper factors must be weighed in determining whether the injunction should issue and care must be taken so as not to interfere with the administrative law process. This would necessarily mean a departure from the standard test which the courts use in determining when an injunction should issue and which Morgan and the Board refer to in their briefs. Rather, the correct factors are those cited by the courts and discussed in length in *Kurtzworth* and the Illinois Supreme Court's decision in *Phillips v. Graham* (1981), 86 Ill. 2d 274, 427 N.E.2d 550.

In *Phillips*, the court reversed the judgment of the circuit court which enjoined the Board's enforcement of an exclusion order against the plaintiff until the issues in the case were reached "either by an appeal from this Order or administrative review of the Racing Board's determination, or the issuance of an opinion in some other

case determinative of the issues raised herein." (86 Ill. 2d 274, 280, 427 N.E.2d 550, 552.) A brief statement of the facts in *Phillips* provides the necessary background relevant to our decision today.

A grand jury indicted Phillips for a bribing conspiracy on March 26, 1980, and with that as a basis, the Board entered an exclusion order excluding Phillips from all racetracks under their jurisdiction. On March 27, Phillips obtained a TRO to enjoin enforcement of the order. A hearing was conducted before an officer of the Board on April 7 who affirmed the exclusion order. A hearing before the full Board was scheduled for April 23, but on April 15 the circuit court issued a preliminary injunction enjoining any action by the Board until that time. The April 23 hearing before the six-member Board resulted in a unanimous affirmance of the hearing officer's decision. On May 5, the circuit court entered the permanent injunction which formed the basis of the appeal.

Acknowledging the general rule that one may not seek judicial relief from an administrative action unless he has exhausted all administrative remedies available to him, the court noted the applicable exception in the *Phillips* case, which provides that a party need not exhaust his administrative remedies when he attacks the constitutionality of a statute on its face. The court held that it was proper for the court to consider the petitions for injunction on this basis, but determined that the circuit court erroneously held that the statute in question was unconstitutional. Had the circuit court made the correct determination that the statute was constitutional, the injunctions should not have issued. 86 Ill. 2d 274, 289, 427 N.E.2d 550, 557.

Prior to its ultimate determination, the court examined when due process requires an evidentiary hearing prior to the deprivation or impairment of a property right, as opposed to a hearing thereafter, and quoted the United States Supreme Court, which said that an "analysis of the governmental and private interests that are affected" is necessary. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902.) The *Mathews* court considered three distinct factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.)

The *Phillips* court, examining the *Mathews* factors and weighing the facts and circumstances in Phillips' case, determined that the procedure afforded adequate due process. They concluded that the procedures established by the Board significantly reduced the "risk of erroneous deprivation" and that the private interests affected were nominal since the order only excluded the plaintiff from the track but still permitted him to race and train horses, albeit through other owners, trainers, and drivers. The court's discussion indicates that the injunction in *Phillips* would have been improper even though the court appears to have resolved the case on a different constitutional issue. *Phillips v. Graham* (1981), 86 Ill. 2d 274, 283-85, 427 N.E.2d 550, 554-55.

An examination of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1985, ch. 8, par. 37—1 *et seq.*) (the Act), shows that once the Board or its agents has suspended an occupational licensee, the person affected may request a hearing within 5 days after receipt of the notice and the Board shall hold the hearing within 7 days after the request is made. (Ill. Rev. Stat. 1985, ch. 8, par. 37—16(c).) However, the statute makes no provision for a specific time limit within which the Board must issue its finding once the hearing is conducted. Because there is no question that the license to pursue an occupation as a horse trainer is a property interest protected by the due process clause (see, *e.g., Barry v. Barchi* (1979), 443 U.S. 55, 64, 61 L. Ed. 2d 365, 375, 99 S. Ct. 2642, 2649), the absence of this provision combined with a dilatorious Board would constitute a deprivation of that property interest, *i.e.,* the occupational license, without due process.

Since due process protects the occupational license, but the preservation of the sport and the protection of the public support the need for summary interim suspensions, the more logical approach would be to permit the occupational licensee to seek provisional relief once a reasonable time has elapsed after the Board's hearing. There is no question that a "reasonable time" would have to be determined by the facts of each case; however, this procedure would protect the administrative law process and would conform to the law in Illinois as established in *Phillips v. Graham* (1981), 86 Ill. 2d 274, 427 N.E.2d 550.

◼ In reviewing the facts of Morgan's case, we have determined that it was improper for the circuit court to enter the TRO prior to a determination by the Board. Such an order entered prior to a hearing by the Board defeats the intent and reason behind the purpose of the summary interim suspension. A TRO would only have been proper after the Board had conducted its hearing and only after more than a

reasonable time had elapsed in their failure to render a decision. However, as a matter of law and in view of the stipulation by the parties that Morgan would have been precluded from his only means of making a living, it would have been proper for the court to enter the injunction, subject to some modification, on December 1, 1986.

The court's injunction stated that the injunction was in effect "until the plaintiff has exhausted all remedies under the Administrative Review Act and until the final rulings are made therein." The lapse of approximately four months was an unreasonable period of time for the Board to withhold its determination, but the court's order was overreaching. The injunction must be modified so that it will cease to operate once the Board renders its decision.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed and the case is remanded with instructions to modify the injunctive order.

Affirmed and remanded.

HEIPLE and WOMBACHER, JJ., concur.