NICOLE T. STRACKA, as Mother and Next Friend of Jacob D. Stracka, Plaintiff-Appellee, v. PHIL BRADLEY, Director of Public Aid, *et al.*, Defendants-Appellants.

Second District   No. 2—92—1045

Opinion filed April 28, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Karen Konieczny, Special Assistant Attorney General, of Chicago, of counsel), for appellants.

No brief filed for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendants Phil Bradley, Director of Public Aid, Roberta Hardy, Chief of Comprehensive Health Services, and the Department of Public Aid (Department) appeal the circuit court's order requiring them to provide 24-hour-a-day in-home nursing services to Jacob Stracka pending a final administrative decision by the Department. Defendants contend that the circuit court lacked jurisdiction to enter the order because plaintiff failed to exhaust her administrative remedies. We reverse and remand.

Jacob Stracka was 2½ years old at the time of trial. He suffers from severe static encephalopathy, a severe form of epilepsy. He suffers frequent seizures and requires various medications which by law can only be administered by a licensed practical nurse (LPN) or registered nurse (RN).

His parents applied to the Department for medical assistance through its Model Waiver Program. The Department initially approved Jacob for 84 hours of in-home care per week, or 12 hours per

day, subject to submission of a plan for gradual reduction at the end of a six-month review period ending June 30, 1992.

The Strackas sought to appeal this decision to the Department, seeking 24-hour-a-day care. Apparently the Department never received their request for a hearing.

On May 13, 1992, Nicole Stracka, as mother and next friend of Jacob Stracka, filed a complaint in the circuit court of Winnebago County. The complaint alleged that the Department had "denied" plaintiff's request for a hearing and that the initial notice of determination therefore represented a final administrative decision. The complaint further alleged that since the Department approved Jacob for 84 hours per week of nursing care, his condition had deteriorated. A letter from Jacob's neurologist, Dr. Marabella A. Alhambra, was attached to the complaint.

Plaintiff alleged that Jacob would suffer irreparable harm if he did not receive 24-hour-a-day assistance and that the action was brought pursuant to the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 et seq.). The complaint sought reversal of the Department's determination.

The Department moved to dismiss the complaint on the basis that plaintiff had failed to exhaust her administrative remedies. Plaintiff filed a motion for a temporary restraining order requiring the Department to provide nursing care 24 hours a day pending resolution of the controversy on the merits.

On June 15, 1992, the court issued the temporary restraining order and took the Department's motion to dismiss under advisement.

On June 10, plaintiff filed with the Department a request for 16-hour-a-day care. On June 29, the Department decided to continue the current plan, providing nursing care for 12 hours a day, in effect for another six months. The Department's notice of decision stated that a request for additional services had been denied as not being cost-effective.

At a hearing on July 13, plaintiff's counsel informed the court that he had just received the new decision and stated that plaintiff intended to file immediately a request for hearing with the Department. The court granted plaintiff leave to file an amended complaint and continued the cause to July 20.

On July 17, plaintiff filed her amended complaint. This pleading alleged that plaintiff received the Department's new decision on July 11 and on July 17 she filed a notice of appeal. Plaintiff further alleged that Jacob suffered from severe seizures and required 24-hour-a-day nursing care to administer the medication necessary to control the

seizures and that he would suffer irreparable harm if he did not receive such care. Plaintiff prayed for a stay of the Department's order pending a final administrative decision on her appeal or outright reversal of the Department's order denying plaintiff's request for 24-hour-a-day care.

Plaintiff also filed a motion for a preliminary injunction requiring the Department to provide 24-hour-a-day care until the Department reached a final decision following the hearing.

The court conducted a hearing on the motion for preliminary injunction at which plaintiff was the only witness. Following the hearing, the court granted plaintiff's motion, enjoining the Department to continue providing 24-hour-a-day care until the Department resolved plaintiff's appeal. The court denied the Department's motion to dismiss. The Department filed a timely notice of appeal.

On appeal, the Department contends that the circuit court lacked jurisdiction to enter a preliminary injunction since plaintiff had failed to exhaust her administrative remedies. Defendant points out that plaintiff's request for hearing is still pending and that she may well succeed on appeal, thus obviating the necessity for judicial action. Defendant further contends that, even if the circuit court had jurisdiction, it abused its discretion in granting an injunction where plaintiff failed to establish the requisites of equitable relief.

Plaintiff has not filed a brief in this court. We will review the merits of this appeal pursuant to the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

■ Generally, an aggrieved party cannot seek judicial review of an agency decision without exhausting all available administrative remedies, unless they can establish a recognized exception to the exhaustion doctrine. The purposes of the exhaustion doctrine are to allow full development of the facts before the agency prior to its final decision, to allow the agency to utilize its expertise and to permit the aggrieved party to succeed before the agency, thus rendering judicial review unnecessary. (*Castaneda v. Human Rights Comm'n* (1988), 175 Ill. App. 3d 1085, 1087, *aff'd* (1989), 132 Ill. 2d 304.) Judicial review of administrative decisions can only be undertaken where there is a final agency determination. (*Taylor v. State Universities Retirement System* (1987), 159 Ill. App. 3d 372.) Such a determination contemplates an adversarial proceeding involving the parties affected where a hearing on controverted facts is held and ultimately a disposition is rendered by an impartial fact finder. (*Jagielnik v. Board of Trustees of the Police Pension Fund* (1991), 211 Ill. App. 3d 26, 32; *Taylor*, 159 Ill. App. 3d at 376.) In the absence of a final agency determination,

the circuit court lacks jurisdiction to consider the matter. *Jagielnik,* 211 Ill. App. 3d at 32.

■ In the instant case, it is clear that there has been no final agency determination. Plaintiff admitted at the hearing that her notice of appeal to the Department remains pending and that she may well succeed before the Department. Nothing in the record demonstrates that the hearing has in fact been conducted. Thus plaintiff has failed to exhaust her administrative remedies.

Furthermore, we do not believe that any of the recognized exceptions to the exhaustion requirement are applicable in this case. Courts have held that the exhaustion of administrative remedies is not required where the agency cannot provide an adequate remedy, where it is patently futile to seek relief from the agency, where no issues of fact are involved or agency expertise is not required, where irreparable harm will result from further pursuit of administrative remedies, or where the agency's jurisdiction is attacked on the ground that it is not authorized by statute. *Board of Trustees of Addison Fire Protection District No. 1 Pension Fund v. Stamp* (1993), 241 Ill. App. 3d 873, 884.

The only exception to exhaustion arguably implicated in this case is that plaintiff will suffer irreparable harm while the administrative proceedings are pending. There is, in fact, a line of cases stating that a circuit court may enter a preliminary injunction to *preserve* the status quo while an administrative action is pending. *Knott v. Illinois Racing Board* (1990), 198 Ill. App. 3d 364; *Morgan v. Illinois Racing Board* (1987), 155 Ill. App. 3d 611; *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564.

Those cases established that injunctive relief is appropriate only where the plaintiff can establish that irreparable harm will occur without the injunction or that he will be deprived of a constitutional right without due process of law. (*Kurtzworth,* 92 Ill. App. 3d at 585.) *Kurtzworth* involved racetrack workers whose occupational licenses had been suspended by track stewards. Each had filed an appeal with the Racing Board, but alleged that the suspensions would not be stayed during the pendency of the hearing. Thus, each would be irreparably harmed through loss of income resulting from the suspensions. Moreover, each was threatened with the loss of property without due process of law.

*Kurtzworth* upheld the issuance of injunctions which prevented the Board from enforcing the suspensions until the hearings had been completed. Since the court found that no constitutional violation occurred, it apparently concluded that the plaintiffs suffered irreparable

harm from the loss of income while the administrative proceedings continued.

Subsequent cases, however, held that injunctive relief is appropriate only after the Board conducts a hearing. (*Knott*, 198 Ill. App. 3d at 367-68; *Morgan*, 155 Ill. App. 3d at 615.) The courts noted that the Horse Racing Act provided for a hearing within 12 days of the initial decision. They held that a loss of income for a brief period pending administrative hearings does not constitute irreparable harm. Thus, a court was justified in interfering in the administrative process only if the hearing was held and the Board unreasonably delayed issuing a decision. *Knott*, 198 Ill. App. 3d at 368; *Morgan*, 155 Ill. App. 3d at 615.

The instant case is distinguishable from *Kurtzworth* in several respects. First, the court's order did not merely preserve the status quo pending the outcome of plaintiff's appeal. Prior to the court proceedings, the Department was providing 12 hours of nursing service per day. The court's order requires the Department to provide 24 hours of service per day. Thus, the court's order is a mandatory preliminary injunction which *altered* the status quo.

Second, there is no evidence that the Department has held a hearing and has unreasonably delayed reaching a decision. Nothing in the record demonstrates whether the hearing has been held or the ultimate outcome of the proceeding has been unreasonably delayed. Moreover, plaintiff did not contend in the trial court that the hearing process would require an unreasonable amount of time.

Finally, plaintiff simply failed to establish irreparable harm. There is no evidence regarding how long the agency appeal process will take. This omission alone makes the question of irreparable harm nearly impossible to determine. Additionally, there was no medical testimony regarding Jacob's medical condition.

Plaintiff testified that when Jacob was receiving 12-hour-a-day care he had to be hospitalized 12 times in a six-month period. These hospitalizations lasted between 3 and 10 days. Jacob had to be kept in the intensive care ward each time because he requires individual attention and is prone to infection. While Jacob was receiving 24-hour care pursuant to the temporary restraining order, he was hospitalized only once, for less than 24 hours. While at home, Jacob requires numerous medications, which by law can only be administered by a LPN or RN. When Jacob goes into a seizure, additional medication is required. If a nurse is not present in the home, Jacob has to be taken to the hospital so that a nurse can administer the drug. Plaintiff's testimony related primarily to the cost of repeated hospitalizations com-

pared to the cost of in-home nursing service. There is no evidence concerning who is obligated to pay for these hospitalizations. Thus, payment of medical care as a burden upon plaintiff, let alone irreparable harm, has not been established.

Jacob's neurologist did not testify at the hearing. Plaintiff's counsel stated that the neurologist was unable to appear at the hearing for medical reasons. He tendered a letter from the neurologist, but the court refused to admit it into evidence. Thus, there is no expert testimony that Jacob will suffer irreparable harm if he continues to receive nursing services for 12 hours a day pending determination of plaintiff's appeal. There is simply insufficient evidence in the record to establish that either Jacob or his parents will suffer irreparable harm if he does not receive 24-hour-a-day care pending the outcome of plaintiff's appeal.

For the foregoing reasons, the circuit court's order granting plaintiff a preliminary injunction is reversed.

Reversed.

BOWMAN and COLWELL, JJ., concur.