ROSEBUD ANANE, Adm'r of the Estate of Daniel K. Anane, Deceased, Plaintiff-Appellant, v. PETTIBONE CORPORATION *et al.*, Defendants (American Process Systems Corporation, Defendant-Appellee).

First District (3rd Division)   No. 1—88—3076

Opinion filed September 12, 1990.

John B. Davidson, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Lenard C. Swanson and Sarah L. Olson, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Rosebud Anane, administrator of the estate of Daniel K. Anane, deceased, filed a products liability action against multiple defendants after the death of her husband due to a factory accident. Plaintiff appeals from the order of the circuit court granting the motion of American Process Systems Corporation (American) to dismiss her amended complaint on the ground that the action was barred by the two-year statute of limitations.

On appeal, plaintiff argues that the trial court's granting of the motion to dismiss was erroneous because American was (1) estopped from raising a limitations defense and (2) American was timely served before the expiration of the limitations period pursuant to the relation back theory of section 2—616(d) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(d)). We agree and reverse the order granting the motion to dismiss.

Daniel K. Anane was employed at Tomoegawa, a factory located in Wheeling, Illinois. On June 25, 1984, while working at or in a ribbon blender (mixing) machine, he was injured when the machine activated. Daniel suffered a traumatic leg amputation and various bone fractures and was flown to the University of Chicago Hospital, where he died on the operating table. His widow and three minor children survived him.

In August 1984, a few weeks after Daniel's death, plaintiff's counsel obtained a court order to inspect and test the blending machine. On September 28, 1984, plaintiff inspected the machine in or-

der to identify the manufacturers and distributors. The complaint named as defendants C.A. Riley Electric Construction Co., the installer of the electric control panel, Instrumentation Services Inc., manufacturer of a unit of the electric control panel, and Beardsley & Piper Division, Pettibone Corporation (Pettibone). Plaintiff believed that Pettibone was the manufacturer of the blending machine because the machine had a Pettibone nameplate. Plaintiff alleged that since the machine was without adequate safety devices, it was unreasonably dangerous and susceptible to abrupt and unintended activation.

Although the machine displayed the Pettibone nameplate, it was manufactured by American. Pettibone ordered the ribbon blender machine involved in the accident at Tomoegawa from American on March 13, 1979. In February 1979, Pettibone and American had a contractual relationship whereby American manufactured and assembled blending machines for the Pettibone label and Pettibone marketed and sold the machines. The contract provided that American would hold Pettibone harmless from any liability due to faulty design. In addition, the parties agreed to notify each other of any lawsuits and to cooperate in the conduct of any such lawsuit. Specifically, the contract provided:

"10. (a) In jurisdictions where American cannot be made a defendant or a third party defendant, subject to the proviso in the following sentence, American will indemnify and hold B&P harmless from any liability, including costs and expenses incurred in defending B&P including attorneys' fees, resulting from alleged improper construction, materials, workmanship, and design, or from a failure of the Product to comply with specifications or any implied or expressed warranties of American, where such liability in fact arises from acts or omissions which are within American's sole and exclusive control, or from joint and/or concurrent acts of American and a third party, other than B&P, who is an employee, agent, contractor, or subcontractor of American in the construction, installation, modification, repair, maintenance, or adjustment of the Product. Provided, American shall have the right to disagree with any amount paid by B&P in the settlement of any liability and, if the parties cannot agree, the amount of American's liability under the indemnity provisions in the first sentence of this paragraph, may be litigated by the parties. Where such liability arises from the joint and/or concurrent acts or omissions of American and B&P and/or a third party, the ultimate liability

or obligation of American to B&P shall be determined in accordance with their proportionate degree of negligence, fault or liability, as ultimately agreed upon between the parties or as determined by a court of competent jurisdiction.

* * *

(c) In the event of an occurrence, accident, claim or suit against either party, resulting from alleged or claimed defects in American Product, written notice containing particulars, to the extent then known to the party, sufficient to identify the time, place, individuals or companies, and the circumstances thereof, and the names and addresses of the injured party and of available witnesses if then known to the parties, shall initially be given by that party to the other as soon as practical.

(d) If a claim is made or suit is brought against either party, resulting from alleged defects in American Products, that party shall immediately forward to the other party a copy of every demand, notice, summons or other process received in the initial service.

(e) Each party shall cooperate with the other in the conduct of suits to the extent such cooperation is not in conflict with its own interests."

The contractual arrangement encompassing the above-cited provisions was terminated as of June 1, 1981. Plaintiff was not aware, however, that American was the manufacturer of the product or of the contract between Pettibone and American until September 1986.

Plaintiff served Pettibone with summons on October 12, 1984, less than four months after the occurrence. On October 29, 1984, Pettibone's in-house counsel informed Stephen Bent, president of American, of the suit. At that time, Bent was already aware of the lawsuit. The following day, October 30, 1984, Pettibone's counsel delivered to Bent a copy of the summons. In addition, outside counsel for Pettibone and American met and discussed the lawsuit.

Pettibone filed an appearance on November 2, 1984, and its answer on February 28, 1985. Pettibone did not, however, implead American as a third-party defendant or disclose American as the manufacturer. The complaint alleged: "The defendant, Beardsley & Piper, a division of Pettibone Corporation (hereinafter Beardsley) had designed, manufactured, sold, delivered and placed in the stream of commerce, a blender or mixing machine bearing the model number PRB 36; a unit of said model having been sold to Tomoegawa." In response, Pettibone answered: "The defendant neither admits nor denies the allegations set forth in [p]aragraph [t]hree, [c]ount I, having

insufficient knowledge and belief as to the truth, and demands strict proof thereof." Pettibone did not attach an affidavit of the truth of the statement of want of knowledge as required by the Illinois Code of Civil Procedure. Ill. Rev. Stat. 1985, ch. 110, par. 2—610(b).

On February 14, 1985, plaintiff filed and served written interrogatories asking Pettibone to identify the machine's manufacturer. On March 7, 1985, plaintiff filed and served upon Pettibone a request for production of documents requesting, *inter alia*, all contracts of purchase, invoices and correspondence pertaining to the sale or manufacture of the machine. Pettibone refused to comply with the discovery requests and in January 1986, prior to the hearing on plaintiff's motion to compel, approximately 18 months after the occurrence, filed a bankruptcy petition.

On February 27, 1986, the circuit court granted Pettibone's motion staying all proceedings, including discovery, against Pettibone. Not until September 3, 1986, two years and two months after the occurrence, at a bankruptcy discovery conference, did Pettibone disclose to plaintiff's counsel for the first time that the machine was manufactured by American. Pettibone also revealed that the president of American had been informed of the lawsuit in 1984.

Consequently, on November 12, 1986, plaintiff filed a fourth amended complaint naming American as an additional defendant. In its January 28, 1987, answer, American acknowledged that it had manufactured the blending machine in question. Nonetheless, on February 17, 1987, American filed a motion to dismiss the complaint as time barred.

The amended complaint additionally alleges that (1) Pettibone delayed disclosure to plaintiff that Pettibone had not manufactured the machine and that American was the manufacturer; (2) the action was filed within the statute of limitations period and any failure to serve American was due to nondisclosure and inadvertence; (3) pursuant to the attached agreement between Pettibone and American each party was under an express obligation to notify and inform the other of every demand, notice, summons or process received relating to any claim or suit resulting from alleged defects in products, including the ribbon blender manufactured by American; (4) in order to improve the marketing of American products, American products were sold using Pettibone's name; (5) Pettibone fulfilled its obligation to notify American of the instant action and concealed the fact that American was the manufacturer; (6) under these circumstances service upon Pettibone constituted service upon American's agent; and (7) the same operative facts pled against Pettibone were the same facts al-

leged against American and American was aware of the cause of action.

On September 13, 1988, the trial court found that the action against American was time barred and granted American's motion to dismiss. Specifically, the court stated that "[c]ounts I, III, IV and VI of plaintiff's 8th [a]mended [c]omplaint are dismissed completely as against American. Counts II and V of plaintiff's 8th [a]mended [c]omplaint are dismissed as against American, except for the claims of the minor plaintiffs. This ruling is final and there is no just reason to delay an appeal or enforcement therefrom."

Plaintiff argues that American is estopped from invoking the bar of the statute of limitations because (1) the Pettibone nameplate misled plaintiff from identifying the manufacturer of the product; and (2) American and Pettibone deliberately delayed disclosure of American as the manufacturer. Secondly, plaintiff argues that the elements of the relation back doctrine of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(d)) are present since American and Pettibone pursuant to their contract were in privity and acted as agents with respect to this litigation. We believe that American is estopped from asserting a statute of limitations defense. We also believe that plaintiff timely served process upon American pursuant to the relation back theory of section 2—616(d) of the Illinois Code of Civil Procedure.

American had the Pettibone nameplate placed on its machine. Pettibone had a duty to inform plaintiff when answering the complaint and interrogatories and responding to the request for production of documents that (1) Pettibone was not the manufacturer of the machine; (2) American was the manufacturer; and (3) to produce the contractual agreement. Pettibone and American led plaintiff to believe that Pettibone was the manufacturer of the machine and upon which plaintiff relied to her prejudice. Under these circumstances, American is estopped from asserting the bar of the statute of limitations. *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 777, 433 N.E.2d 315, 324.

■■ The doctrine of estoppel requires proof of the following six elements: (1) words or conduct by the party against whom the estoppel is alleged constituting either a misrepresentation or concealment of material facts; (2) knowledge on the part of the party against whom the estoppel is alleged that representations made were untrue; (3) the party claiming the benefit of an estoppel must have not known the representations to be false either at the time they were made or at the time they were acted upon; (4) the party estopped

must either intend or expect that his conduct or representations will be acted upon by the party asserting the estoppel; (5) the party seeking the benefit of the estoppel must have relied or acted upon the representations; and (6) the party claiming the benefit of the estoppel must be in a position of prejudice if the party against whom the estoppel is alleged is permitted to deny the truth of the representations made. *Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 1079, 416 N.E.2d 385, 389-90.

In the present case, (1) the Pettibone nameplate concealed that American was the machine's manufacturer; (2) American knew that the representation of Pettibone as the manufacturer was untrue; (3) plaintiff did not know that Pettibone was not the manufacturer; (4) American should have expected that the nameplate would have been relied upon by the plaintiff; (5) plaintiff relied upon the nameplate and diligently pursued discovery; and (6) plaintiff would be prejudiced if American is permitted to deny that it manufactured the product. Accordingly, we find that American is estopped from asserting the defense of the statute of limitations as a bar to plaintiff's cause of action.

In addition, a cause of action against a person not originally named a defendant is not barred by lapse of time under any statute prescribing or limiting the time in which an action may be brought if certain conditions are met. (*Campbell v. Feuquay* (1986), 140 Ill. App. 3d 584, 587, 488 N.E.2d 1111, 1113.) An amendment to a complaint will relate back to the original time of filing if each of the five following conditions is met: (1) the time prescribed or limited had not expired when the original action commenced; (2) failure to join the person as a defendant was inadvertent; (3) service of summons was in fact had upon the person, his agent or partner, even though he was served in the wrong capacity or as agent of another; (4) the person, within the time that the action might have been brought or the right asserted against him, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him; and (5) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading even though the person was not named originally as a defendant. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(d).) This statute is to be construed liberally to the end that causes are decided on their merits and not by procedural technicalities. *Campbell v. Feuquay* (1986), 140 Ill. App. 3d 584, 590, 488 N.E.2d 1111, 1115.

Given the parties' contractual agreement, we conclude

that Pettibone was an agent for the purpose of service of process upon American. (*Hix v. Amato* (1977), 50 Ill. App. 3d 761, 365 N.E.2d 1148.) Pettibone was held out to the public as manufacturer of the machine. Defendant never submitted sufficient answers to interrogatories, an affidavit, or documents in response to plaintiff's requests. Plaintiff's efforts to ascertain the identity of the manufacturer were reasonable. (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1143, 419 N.E.2d 465, 468.) Any mistake as to the identity of the person who should have been named as the proper party defendant was induced, if not caused, by the representations of Pettibone. *Campbell v. Feuquay* (1986), 140 Ill. App. 3d 584, 590, 488 N.E.2d 1111, 1115.

The decision as to whether amendments to the pleadings should be allowed rests with the sound discretion of the trial court; and the test for determining whether that discretion has been abused is whether the trial court's decision furthers the ends of justice. (*Feuquay*, 140 Ill. App. 3d at 590.) This test has not been satisfied here.

We therefore conclude that the trial court abused its discretion in finding that plaintiff was not entitled to amend the complaint under section 2—616 of the Illinois Code of Civil Procedure. We also conclude that the trial court erred in dismissing plaintiff's cause of action.

Accordingly, the order of the circuit court of Cook County granting American's motion to dismiss is reversed and this matter is remanded for further proceedings.

Reversed and remanded.

CERDA, P.J., and WHITE, J., concur.