*In re* ESTATE OF CHARLES SILVERMAN, an Alleged Disabled Person (Jack H. Silverman, Petitioner-Appellant, v. Charles Silverman, Respondent-Appellee).

First District (2nd Division)   No. 1—93—0349

Opinion filed December 21, 1993.

David L. Passman, of Chicago, for appellant.

Malk & Harris, of Chicago (Paul C. Miltonberger and Terri L. Rudd, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

On September 30, 1992, petitioner, Jack H. Silverman, filed a petition asking that the circuit court adjudicate respondent, his brother Charles Silverman, disabled, and to appoint petitioner guardian over his person and estate. Respondent, whose wife of 42 years had recently passed away, is a retired salesman in his early seventies. He continues to live in the marital home with his wife's sister, Sarah R. Block, who lived with the couple during all of their married life. Respondent and his wife had no children. The only living members of his immediate family are petitioner and another brother, I.J. Silverman, who has not joined in the petition.

The petition did not contain a physician's report indicating that respondent was mentally disabled. However, petitioner did attach thereto his own statement specifying the areas of respondent's alleged disability and why petitioner felt that he needed a guardian, *viz.*, that respondent has a submissive, nonassertive personality; that he is susceptible to undue influence; that respondent is unable to make decisions regarding his personal life or to take care of his financial matters; that respondent's late wife and her sister isolated respondent from his family and controlled his life; and that since the death of his wife about five months before the filing of the petition, respondent has been unduly influenced by his "strong-willed," "forceful" and "domineering" sisters-in-law. Petitioner contended that Block monitors respondent's activities and phone calls, keeping

him a virtual "prisoner in his own home," and that she then reports respondent's activities to her sister Irene Gorell, who resides in Florida.

In his statement, petitioner also related his belief that Block has caused respondent to transfer $70,000 from his bank account to hers and that she permitted respondent an allowance of only $8 per week. As a result, respondent has asked petitioner for money on a number of occasions. In petitioner's opinion, Block and Gorell are taking advantage of respondent's diminished mental capacity and submissive personality to gain control over his assets. He also stated his belief that they have induced respondent to make a will disposing of his property in a manner favoring them and their families. Petitioner concluded his statement by asserting that it would be in respondent's best interest that he move to a retirement community where he could freely interact with others, and that petitioner is willing to serve as respondent's guardian.

On October 2, petitioner filed a petition for the appointment of a temporary guardian over respondent's person and estate, claiming that this was necessary because a hearing was scheduled in three days to consider a petition to probate respondent's late wife's will. Petitioner sought to object to the petition to probate the will, asserting that respondent had signed it without realizing that, if granted, he would be "waiving valuable rights."

On the same day, the court appointed a guardian *ad litem* for respondent. Also on October 2, respondent executed a written consent to have petitioner appointed his guardian, but when petitioner sought to file the consent in probate court on October 5, respondent and his attorney appeared before the court and revoked it. The court denied petitioner's request to file the consent and set October 28 for a hearing on the matter.

Just before the hearing date, *i.e.*, on October 26, petitioner filed a motion to compel respondent to submit to a mental examination to be conducted by Dr. Marvin Ziporyn pursuant to Supreme Court Rule 215 (134 Ill. 2d R. 215), and to continue the hearing. On the same day, respondent filed his motion to dismiss the petition to adjudicate respondent disabled and for appointment of a guardian. The motion, which did not indicate the provision of the Code of Civil Procedure under which it was brought, was accompanied by a medical report in the form of an affidavit signed by Dr. Maurice Goldstein, respondent's family physician. Dr. Goldstein averred that he had been respondent's physician for 30 years and that he examined him on October 13, 1992. Based on his examination and knowledge of respondent, he stated that respondent was mentally competent and

able to make personal and financial decisions on his own, and that there was no reason for him to move from his residence.

Respondent also attached to his motion a copy of the guardian *ad litem*'s report which had been filed with the court on October 21. In his report, the guardian *ad litem* described his interview with respondent and concluded that he did not need a guardian. Respondent told the guardian *ad litem* that he had one bank account containing either $50,000 or $80,000 and that he withdraws as much money as he needs for his and Block's expenses. He also said that he balances his own checkbook and that neither of his sisters-in-law has access to the account. He stated that no last will or declaration of trust had been drawn up for him, but that he planned to have one drafted in the near future. Respondent answered questions on current events and performed mathematical calculations, erring by one dollar on one addition problem. Respondent adamantly denied that he lived under the influence of his sisters-in-law and stated that he would like the judge to know that he can handle his own affairs.

At the hearing held on the motions on October 26, the court stated that it was hesitant to subject respondent to repeated medical evaluations based only on petitioner's lay opinion. It found Dr. Goldstein's report unambiguous and reliable given the long-term physician-patient relationship between respondent and the doctor. The trial judge expressly recognized that the code required her to order an evaluation of respondent when, as in this case, petitioner did not obtain one; she nevertheless found it unnecessary because respondent had presented a report from Dr. Goldstein. Since petitioner presented no factual basis establishing a need for guardianship, the court denied his motion to order the examination and to continue the hearing and granted respondent's motion to dismiss the petition to adjudicate him disabled and for the appointment of a guardian.

At petitioner's request, the court then reversed itself on the motion to dismiss and, although admonishing petitioner that he was risking sanctions because of the strong evidence favoring dismissal, it ordered a new trial on the limited issue of the foundation for, and the accuracy of, Dr. Goldstein's report. The court scheduled a hearing on the matter for December 4, stating that if petitioner raised sufficient doubts about Dr. Goldstein's report at the hearing, it would appoint an independent evaluator. The court also granted petitioner leave to conduct discovery.

On November 17, at his discovery deposition, Dr. Goldstein testified that he was 83 years old and had been practicing medicine for over 60 years. He stated that he is presently on the staff of Illinois Masonic Medical Center and that he is qualified for family practice.

Over the past three years, he has cut back on his practice and spends only 18 to 20 hours per week treating patients, approximately 20% of whom are over 70 years old. He is not a psychologist or psychiatrist but gained some knowledge of those fields during his residency. He said that he was confident in his ability to evaluate mental competency without formal training in psychology or psychiatry. Although he admitted that he was unfamiliar with the requirements of the probate code relating to mental evaluations, he stated that he has "signed *** certificates" relating to the mental status of patients who became mentally incompetent as a result of strokes, Alzheimer's disease or severe mental illness. He determines whether a patient has a mental disability by speaking with and observing the patient and by speaking with the patient's family.

Dr. Goldstein testified that respondent had been his patient since 1980, and that he examined respondent on October 9, 1992, correcting the October 13 date in the report. He stated that he evaluated respondent based on their conversation and his observations in the context of having known him for the previous 12 years. He performed a physical examination of respondent but did not conduct any tests, such as a brain scan or an electroencephalogram, to detect mental deterioration. The doctor acknowledged that these tests might be appropriate for a legal determination of a patient's mental disability, but contended that they were unnecessary in this case; in his judgment, a battery of tests is unnecessary to determine if a patient is mentally competent when he has known that patient for an extended period of time. The doctor stated that "[i]f an individual can think properly, he is coherent, conversant, makes sense in the conversation, he is able to handle his everyday affairs well."

Doctor Goldstein discussed the upcoming presidential election and retirement with respondent and described his demeanor and intellect as normal except that he was more outgoing and assertive than he had been in the past; he attributed this change to the death of respondent's wife whom the doctor described as domineering. The doctor testified that he did not know what respondent's level of education was or if he had any learning disabilities. When asked, he said that he did not believe that respondent was mildly retarded. He stated that he knew respondent could read and write because he wrote a check to pay for his visit. The doctor conceded that he did not ask respondent specific questions regarding his finances, stating that "[a]ll I know is that my experience with him and his visits to the office had not changed during the twelve years that he was my patient, and at no time did I feel that he was incapable of handling his affairs. It never even dawned on me." In Dr. Goldstein's opinion,

respondent's living arrangement with Block was advantageous for him and problems could occur if he were forced to alter this long-term arrangement. The doctor admitted that respondent's attorney prepared the report, but added that he had read it before signing it.

On December 4, petitioner filed a motion to strike Dr. Goldstein's report and for reconsideration of his motion to compel respondent to submit to a mental examination, contending that Dr. Goldstein's discovery deposition revealed that his report was inaccurate and without foundation. Petitioner's bases for this argument were that: (1) Dr. Goldstein's report stated that the doctor had a 30-year history with respondent while in his deposition he stated that respondent was his patient for 12 years; (2) Dr. Goldstein's failure to conduct any psychological tests or to ask respondent questions concerning his financial matters rendered the report without foundation; and (3) Dr. Goldstein signed the report which was actually prepared by respondent's attorney.[1]

Petitioner attached three affidavits to his motion. In one of those, Ernest G. Bloch, a nephew of respondent's late wife, averred that respondent told him that he had transferred $70,000 from his bank account to Block's at her behest and that his sisters-in-law were encouraging him to cut off contact with his brother. Bloch, a retired banker, stated that he had unsuccessfully attempted to discuss investments with respondent on a number of occasions and that he believed respondent was subject to being financially exploited by his sisters-in-law.

The second affidavit was sworn to by petitioner. He reiterated many of the allegations in his statement accompanying the petition, adding that respondent indicated that he did not know why Block wanted him to transfer $70,000, but when petitioner offered to call her and find out, respondent became frightened and asked him not to.

Attorney Edward J. Kahn, who represented petitioner in filing his petition, signed the final affidavit. In it, he averred that respondent's sisters-in-law contacted him a few days after the death of their sister, respondent's wife, to obtain an inventory and valuation of the assets and property in which she had an interest. He conducted the inventory and found that respondent and his late wife had sev-

---

[1]Petitioner also contends that Dr. Goldstein had only a "sporadic" 12-year history with respondent. However, Dr. Goldstein's records, which were made a part of his deposition, indicate that he saw respondent 17 times in 12 years for a variety of physical ailments and check-ups. Additionally, respondent's wife was Dr. Goldstein's patient for 21 years.

eral bank accounts at different banks with funds totaling more than $230,000. Kahn also stated that he changed respondent's will for him in 1992 at his request. Kahn thus concluded that respondent gave the guardian *ad litem* incorrect information regarding his will and finances.

On December 4, the court admitted Dr. Goldstein's deposition into evidence upon agreement of the parties. In response to petitioner's motion, respondent characterized the guardianship petition as an attempt by petitioner to gain control over respondent's assets.[2] In an attached affidavit, respondent refuted the substance of the three affidavits submitted by petitioner, stating that he was aware of the nature and extent of his investments, that he was not controlled by his sisters-in-law, and that he had no desire to alter his living arrangements.

On December 9, the court denied petitioner's motion to strike and to reconsider his motion to compel a mental examination; it granted respondent's motion to dismiss, but declined to impose sanctions on petitioner. This appeal followed.

The circuit court may appoint a guardian for a person whose disability prevents him from making or communicating responsible decisions regarding the care of his person or from managing his estate or financial affairs. The guardian may be appointed for the person or the estate, or for both the person and the estate, depending upon the circumstances. (Ill. Rev. Stat. 1991, ch. 110½, par. 11a—3(a).) Our probate code also expresses a policy favoring maximum self-reliance and independence. Guardianship is to be ordered only to the extent necessary. (Ill. Rev. Stat. 1991, ch. 110½, par. 11a—3(b).) A disabled person is defined by the statute as one who is eighteen years old or older who "because of mental deterioration or physical incapacity is not fully able to manage his person or estate or *** is mentally ill or developmentally disabled and *** is not fully able to manage his person or estate." Ill. Rev. Stat. 1991, ch. 110½, par. 11a—2.

Whether and to what extent a person needs a guardian is a factual determination to be made by the trial court and which a reviewing court may not reverse unless it is against the manifest

---

[2]Respondent also alleged that Kahn breached the Illinois Rules of Professional Conduct by undertaking to represent petitioner against respondent, a former client. On December 9, the court granted leave to David Passman to file an additional appearance on behalf of petitioner. The trial court was nonetheless concerned about a possible conflict, but took no action on it because she granted the motion to dismiss. Since respondent did not move to disqualify Kahn and the lower court made no ruling on the matter, we need not address this issue.

weight of the evidence. (*In re Estate of Hickman* (1991), 208 Ill. App. 3d 265, 276, 566 N.E.2d 881, 888.) To aid in that determination, the petition for adjudication of disability "should be accompanied by a report" which: (1) describes the nature and type of the respondent's disability; (2) evaluates the respondent's mental and physical condition and, if appropriate, his or her educational level, adaptive behavior and social skills; (3) states an opinion as to whether guardianship is needed; (4) recommends the most suitable living arrangement for the respondent or, if appropriate, a treatment or habilitation plan; and (5) contains the signatures of all those who performed the evaluation, at least one of whom must be a licensed physician. (Ill. Rev. Stat. 1991, ch. 110$^1$/2, par. 11a—9(a).) If the petition is not accompanied by a report, "the court shall order appropriate evaluations to be performed" and a report is required to be filed within ten days of the hearing. Ill. Rev. Stat. 1991, ch. 110$^1$/2, par. 11a—9(b).

■ Petitioner argues on appeal that because he brought to the trial court's attention numerous defects in Dr. Goldstein's report, the court's refusal to strike the report was an abuse of discretion. We disagree; we hold that the report comported with statutory requirements. Dr. Goldstein, a licensed physician, evaluated respondent's physical and mental condition, found no disability, stated that respondent did not require a guardian, recommended no change in his living arrangements, and signed the report. Since petitioner failed to point out significant deficiencies in the report through his deposing Dr. Goldstein, we cannot conclude that the trial court abused its discretion in refusing to strike it. See *In re Estate of Malloy* (1981), 96 Ill. App. 3d 1020, 1023, 1027, 422 N.E.2d 76, 79, 82 (holding that even though the respondent's examining doctor did not ask her questions regarding her financial affairs and his report was not exhaustive, it complied with the statutory requirements and was properly considered at the guardianship hearing).

Petitioner also argues that by relying on Dr. Goldstein's report, the trial court failed to exercise its discretion and abdicated its responsibility to make a legal determination regarding respondent's disability. Petitioner contends that the trial court erred in precisely the same manner as did the court in *In re C.B.* (1993), 248 Ill. App. 3d 168, 169, 618 N.E.2d 598, wherein the judge in a child custody dispute awarded custody to a friend of the child's mother rather than to the child's grandmother. In making its ruling, the court relied solely on the expert testimony of a psychiatrist and his assistant who met with the child for only three hours. The court acknowledged that their testimony was deficient, but felt that it had to follow their recom-

mendation. We reversed, finding that the trial court erred in making a determination based on evidence it found inadequate and in failing to consider all relevant factors regarding the best interests of the child. *In re C.B.*, 248 Ill. App. 3d at 180, 618 N.E.2d at 602.

The case before us is clearly distinguishable. Here, the trial court expressly found Dr. Goldstein's report reliable. Unlike the experts in *C.B.*, Dr. Goldstein had a long history with respondent and made his evaluation in the context of that relationship. Moreover, the trial court did not feel obligated to accept Dr. Goldstein's report; rather, the court stated that if petitioner could show that the report lacked accuracy or a foundation, it would order an independent evaluation. Accordingly, we cannot agree that the trial court failed to exercise its discretion or that it abdicated its responsibility in any way.

Petitioner next argues that the trial court's denial of his motion to compel violated the Probate Act of 1975's mandate that the court "shall order" an evaluation if one does not accompany a petition and that it was also an abuse of discretion under Supreme Court Rule 215. (Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 11a—9(b); 134 Ill. 2d R. 215.) He further argues that the court's ruling effectively prevented him from obtaining critical evidence; that there was insufficient time for him to arrange for an evaluation of respondent because the petition was filed to protect respondent from imminent harm in the pending proceedings regarding his wife's estate; that the court's intervention was necessary because respondent's sisters-in-law control his activities; that any inconvenience another evaluation may have caused respondent was outweighed by the need to prevent respondent's sisters-in-law from exploiting him; and that if the trial court had the benefit of another evaluation, it may have found respondent in need of a limited guardian.[3] (See *In re Estate of Barr* (1986), 142 Ill. App. 3d 428, 433-34, 491 N.E.2d 1241, 1246 (holding that trial court should have appointed a guardian over the mentally ill respondent's estate to prevent him from depleting his inheritance).) However, petitioner nowhere asserts that he at any time unsuccess-

---

[3]Respondent argues that petitioner waived this issue by failing to address it in the court below. However, courts can consider limited guardianships even when not requested to by the parties. See Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 11a—3(b); see also *In re Estate of Mackey* (1980), 85 Ill. App. 3d 235, 240, 406 N.E.2d 226, 230-31 (holding that jury verdict forms and issues instructions should have instructed the jury to consider whether the respondent needed a limited guardian, as well as whether she needed a plenary guardian, when evidence indicated that she did not remember signing lease documents, did not know who her tenants were, could not identify her attorneys, and was unaware of how much money she had).

fully attempted to have respondent evaluated or that he presented evidence that respondent was in need of treatment for mental deterioration or mental illness.

■ We do not believe that the code provision requiring courts to order evaluations when petitions lack medical reports mandates such orders when respondents come forward with statutorily sufficient reports. The clear purpose of the provision is to ensure that the court adjudicates disability based upon a reliable evaluation of the subject's physical and mental status. Petitioner has shown no prejudice from the trial court's reliance on Dr. Goldstein's report, especially since the trial court allowed petitioner to challenge the report and to depose Dr. Goldstein. The trial court considered both the report and the deposition; it did not unduly limit the evidence before it.

Furthermore, the trial court did not abuse its discretion under Supreme Court Rule 215 by refusing to order an additional evaluation of respondent. That rule provides that "upon notice and for good cause shown on motion" the court may order a party to submit to a physical or mental examination. (134 Ill. 2d R. 215(a).) The purpose of the rule is to allow discovery that will assist the trier of fact in reaching its determination. (*In re Marriage of Kutchins* (1987), 157 Ill. App. 3d 384, 387, 510 N.E.2d 1300, 1302-03.) The rule vests broad discretion in the trial court to order examinations, but the court must ensure that the statutory requirements are met and that indiscriminate examinations are not permitted. *In re Conservatorship of Estate of Stevenson* (1970), 44 Ill. 2d 525, 529, 256 N.E.2d 766, 768.

In *Stevenson*, the supreme court upheld the trial court's order that the defendant submit to a pretrial mental examination when the plaintiffs' petition for appointment of a conservator alleged that she was wasting her assets, was pursued by creditors, and suffered from mental disturbances. (*Stevenson*, 44 Ill. 2d at 526-27, 256 N.E.2d at 767-68.) Petitioner relies on *Stevenson* to support his contention that the trial court erred by not ordering a mental evaluation of respondent. But *Stevenson* is distinguishable from the case at bar. Here, unlike *Stevenson*, the court had a medical report before it and petitioner did not allege that respondent suffered from mental disturbances. At most, petitioner established, if anything, only that respondent is, and always has been, a passive individual and that he may not be aware of the extent of his assets. However, what petitioner characterizes as a lack of awareness may as readily be viewed as a lack of concern, especially since respondent did not handle the family finances during his long marriage. Additionally, while petitioner alleges that Block urged respondent to transfer funds to her account, there is nothing in the record to show that such a transfer was ever

made. We conclude, therefore, that the court did not abuse its discretion in refusing to compel respondent to submit to an additional examination because petitioner did not show good cause for such an examination (see *Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 401, 405 N.E.2d 418, 424 (holding that under Rule 215, the trial court has wide discretion in determining what is "good cause")); and, whether examined on the basis of the Probate Act or Supreme Court Rule 215, we are constrained to hold that the trial court did not err in refusing to reconsider petitioner's motion to compel respondent to submit to a mental examination.

Petitioner's final argument is that the trial court erred in granting respondent's motion to dismiss without holding a hearing as contemplated by the Probate Act and without requiring respondent's presence at the requisite hearing. Although respondent did not label his motion, he apparently brought it under section 2—619 of the Code of Civil Procedure.[4] (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9) (a defendant may within the time for pleading file a motion to dismiss the action by asserting "other affirmative matter" which defeats the claim).) The nature of the affirmative matter intended to defeat the claim must negate a cause of action by refuting critical conclusions of law or fact which are unsupported in the complaint. (2 C. Nichols, Illinois Civil Practice § 1436, at 545-48 (1990 & Supp. 1993) (and cases cited therein).) In the context of a section 2—619 motion to dismiss, the parties may, as was done in the present case, file affidavits, counteraffidavits, deposition transcripts, etc. (*Kirby v. Jarrett* (1989), 190 Ill. App. 3d 8, 12, 545 N.E.2d 965, 968.) When a section 2—619 motion is filed and there is no jury demand and disputed genuine issues of fact are presented, a trial court has two options. It may deny the motion without prejudice or it may hear and determine the merits of the dispute based on the pleadings, affidavits, counteraffidavits, and other evidence presented. (*Kirby*, 190 Ill. App. 3d at 13, 545 N.E.2d at 968; *Etten v. Lane* (1985), 138 Ill. App. 3d 439, 443, 485 N.E.2d 1177, 1180.) The trial court may not, however, weigh conflicting affidavits. If presented with conflicting affidavits, it must either hear other proof on the salient facts or deny the motion without prejudice. *Etten*, 138 Ill. App. 3d at 445-46, 485 N.E.2d at 1181-82.

On review of the denial of a motion to dismiss under section 2—619, we must review the law and the facts and we may reverse if

---

[4]Motions to dismiss should clearly state the provision of the code under which they are brought (see 2 C. Nichols, Illinois Civil Practice § 1396, at 504-05 (1990)). Section 2—619.1 allowing combined motions requires each part to be clearly labeled. Ill. Rev. Stat. 1991, ch. 110, par. 2—619.1.

the trial court erred regarding the law or ruled against the manifest weight of the evidence. *Kirby*, 190 Ill. App. 3d at 13, 545 N.E.2d at 968; *Etten*, 138 Ill. App. 3d at 443, 485 N.E.2d at 1180.

Petitioner asserts that the trial court's failure to hold a hearing on the merits of the petition constituted reversible error given the deficiencies in Dr. Goldstein's report and the inaccurate information respondent related to the guardian *ad litem*. Moreover, petitioner argues, the trial court violated public policy, as reflected in the Probate Act provisions contemplating hearings, when it denied petitioner's request for a more extended hearing.[5] (Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 11a—8.) We find these arguments to be without merit. As discussed above, Dr. Goldstein's report was adequate under the code. Additionally, although the Probate Act contains provisions relating to hearings, it does not abrogate the trial court's authority to entertain a motion to dismiss a cause of action.

█ In the case at bar, because the trial court had before it conflicting affidavits it appropriately considered other competent evidence on the issue of respondent's alleged disability, and we are confident that it complied with the Probate Act by refusing to rely solely on the lay opinions supporting the petition. Before announcing its decision to grant respondent's motion to dismiss, the trial judge stated that she had "considered all of the pleadings filed; all of the attached Affidavits [*sic*]; I have carefully read the deposition of Dr. Morrie Goldstein [*sic*], as well as the written report *** and I have carefully considered the oral arguments *** and, in fact, I re-examined the entire file." After considering all of the evidence presented, the court found no need to prolong the proceedings. The judge weighed the possible burden on respondent if he were required to undergo additional evaluations against her responsibility to ensure that truly disabled persons are protected. Given petitioner's unsubstantiated allegations in his petition, we cannot say that the trial court erroneously construed the law or ruled against the manifest weight of the evidence when it granted respondent's motion to dismiss.

For the aforementioned reasons, we affirm the trial court.

Affirmed.

---

[5]Respondent argues that petitioner waived his arguments regarding the necessity of a hearing on the merits of his petition and respondent's presence there. Respondent's argument is without merit because petitioner specifically requested a hearing on the merits of his petition and filed a Supreme Court Rule 237(b) (134 Ill. 2d R. 237(b)) notice requesting respondent's presence at the hearing.

174

McCORMICK, P.J., and HARTMAN, J., concur.