VIVIAN O'ROURKE, Plaintiff-Appellant, v. ACCESS HEALTH, INC., Defendant-Appellee.

First District (5th Division)   No. 1—94—0079

Opinion filed July 5, 1996.

Joseph Rago, of John R. Wienold & Associates, Ltd., of Aurora, for appellant.

Law Offices of Theodore M. Becker, P.C., of Chicago (Daniel S. Kaplan, of counsel), for appellee.

JUSTICE HOURIHANE delivered the opinion of the court:

Plaintiff, Vivian O'Rourke (Mrs. O'Rourke), a breast cancer patient, sued her insurer, Access Health, Inc. (Access), for refusing to pay the costs associated with a bone marrow transplant prescribed by her physician, but determined by Access to be "experimental" and thus not a plan benefit. Plaintiff appeals the trial court's dismissal with prejudice of her complaint, pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1994)).

On appeal, plaintiff argues that the trial court erred in granting defendant's motion by (i) finding no ambiguity in the controlling contract language governing experimental procedures; (ii) finding the bone marrow transplant did not fall within the contract definition of "emergency" care and was not otherwise authorized by plaintiff's primary care physician; (iii) applying a two-year statute of limitations to plaintiff's claim for attorney fees under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)); and (iv) finding that plaintiff's failure to seek administrative review of an adverse decision by the Illinois Department of Insurance (IDI) estopped her from relitigating the same issues in the circuit court. Plaintiff further argues on appeal that defendant is equitably estopped to deny coverage. For the reasons that follow, we affirm the decision of the trial court.

## BACKGROUND

In July 1989, Mrs. O'Rourke was enrolled as a member of Access, an Illinois health maintenance organization (HMO), by virtue of a group medical plan that covered her husband. In November of 1989, Dr. Steven K. Sauerberg, an Access-approved primary care physician, referred Mrs. O'Rourke to Dr. Nicholas J. Vogelzang for treatment of breast cancer. A few days later, Mrs. O'Rourke underwent a modified radical mastectomy, followed by a standard course of chemotherapy. Dr. Vogelzang also advised Mrs. O'Rourke that she should consider high-dose chemotherapy with autologous bone marrow transplant (HDC/ABMT).[1] Mrs. O'Rourke obtained a second opinion from Dr. Patricia Madej of Hinsdale Hematology/Oncology Associates, Ltd., who concurred in Dr. Vogelzang's recommendation.

---

[1]According to the case law, HDC/ABMT is a two-step procedure. The patient's bone marrow cells are first extracted and placed temporarily in frozen storage. The patient next undergoes high-dose chemotherapy, after

Thereafter, on December 12, 1989, Dr. Vogelzang wrote to Dr. Sauerberg requesting that he seek authorization from Access for the HDC/ABMT procedure. Approximately one month later, Access denied precertification because the procedure was "experimental" and thus excluded from coverage under section 8.17 of the subscription agreement. Section 8.17 provides:

> "Procedures which are considered experimental by the ACCESS medical staff are not covered by ACCESS. In the event that such procedures are deemed non-experimental by the Federal Office of Health Technology Assessment, the decision of the Federal Office of Health Technology will prevail."

On January 23, 1990, plaintiff wrote to Dr. Glen Tomlinson, Access medical director, seeking reconsideration of the denial of coverage. Approximately two months later, Access again denied coverage, based on its determination that "bone marrow transplantation for breast cancer disease clearly ha[d] not reached the level of the generally accepted standard of treatment." Notwithstanding the denial of coverage, Dr. Vogelzang encouraged Mrs. O'Rourke to proceed with the bone marrow transplant, "if at all financially possible."

On April 23, 1990, plaintiff again sought reconsideration but was once more advised by Access that coverage was being denied pursuant to section 8.17 of the subscription agreement.

Shortly thereafter, Mr. O'Rourke executed a membership contract change which cancelled the subscription agreement with Access, effective June 30, 1990. Sometime that month, Mrs. O'Rourke began the HDC/ABMT procedure at Hinsdale Hospital. Significantly, neither the hospital nor the physician is affiliated with Access.

In an effort to compel Access to pay the cost of the HDC/ABMT, Mrs. O'Rourke filed a complaint with the IDI. The IDI contacted the Federal Office of Health Technology Assessment in Washington, D.C., which confirmed that although the National Cancer Institute was evaluating HDC/ABMT for the treatment of several cancers, including breast cancer, the procedure was presently considered experimental. On October 24, 1990, without conducting a formal hearing, the IDI closed the O'Rourkes' complaint file, stating that Access "appears to be within its contractual rights to deny Ms. O'Rourke's claim." Plaintiff did not seek reconsideration of the IDI's decision. Rather, in July 1992, Mrs. O'Rourke filed a two-count complaint

---

which the stored bone marrow cells are reinfused into the patient to counter the toxic effects of the chemotherapy. See *Bechtold v. Physicians Health Plan of Northern Indiana, Inc.*, 19 F.3d 322, 324 (7th Cir. 1994); *Grethe v. Trustmark Insurance Co.*, 881 F. Supp. 1160, 1161 (N.D. Ill. 1995).

against Access in the chancery court. Count I seeks reimbursement of expenses in connection with the HDC/ABMT. Count II seeks attorney fees under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)), based on defendant's allegedly vexatious and unreasonable conduct in the investigation and resultant denial of her claim for coverage.

Access filed a combined amended motion to dismiss, pursuant to section 2—619.1 of the Code. Access argued that dismissal of both counts was warranted under section 2—615 because the complaint failed to state a cause of action for equitable relief. Access also argued for dismissal of count I to the extent that plaintiff sought reimbursement for medical expenses incurred subsequent to Mr. O'Rourke's voluntary termination of coverage through Access. As to count II, Access asserted that plaintiff's admission in the complaint that plaintiff's counsel had referred this matter to the IDI and the IDI's determination that Access' denial of coverage was within its rights, effectively precluded her from now arguing that Access' conduct was vexatious and unreasonable.

Access also argued that both counts should be dismissed pursuant to section 2—619(a)(9) because the HDC/ABMT procedure was provided by a non-Access affiliated physician and hospital, was not an "emergency," as defined in the subscription agreement, and was not otherwise "authorized" by her primary care physician. Access further argued for dismissal of count II under section 2—619(a)(5), asserting that plaintiff's claim is time-barred by the two-year statute of limitations set forth in section 13—202 of the Code for actions for a statutory penalty (735 ILCS 5/13—202 (West 1994)).

Access filed a supplement to its amended motion to dismiss, seeking dismissal under section 2—619(a)(4) on the ground that plaintiff is collaterally estopped from relitigating the same issues raised before the IDI.

The trial court granted defendant's section 2—619 motion and dismissed both counts with prejudice. This appeal followed. 134 Ill. 2d Rs. 301, 303.

## ANALYSIS

■ Although defendant moved under both section 2—615 and section 2—619, the trial court's dismissal of plaintiff's complaint was predicated on the arguments raised in defendant's section 2—619 motion. Where a section 2—619 motion has been filed and there is no jury demand and disputed issues of fact are presented, the trial court may either deny the motion without prejudice to the right to raise the subject matter of the motion by answer, or the court may, as was

the case here, determine the merits of the dispute based on the pleadings, affidavits, deposition testimony and other evidence presented. *In re Estate of Silverman*, 257 Ill. App. 3d 162, 172, 628 N.E.2d 763 (1993). On review of the grant of a motion to dismiss under section 2—619, this court must review the law and the facts and may reverse if the trial court erred regarding the law or ruled against the manifest weight of the evidence. *In re Estate of Silverman*, 257 Ill. App. 3d at 172-73; *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 13 (1989).

I

The threshold issue is whether, as defendant asserts, the prior decision of the IDI should be given *res judicata* or collateral estoppel effect. Although the trial court dismissed only count II on this basis, the argument applies equally to both counts.[2]

■ Under the Health Maintenance Organization Act (215 ILCS 125/1—1 *et seq.* (West 1994)), HMOs must establish and maintain a complaint resolution system. Such system, however, does not preclude an enrollee from filing a complaint with the Director of the IDI. 215 ILCS 125/4—6(a) (West 1994). Upon receipt of a complaint from an enrollee, the IDI notifies the respondent of the complaint and the date a response is due. 215 ILCS 125/4—6(b) (West 1994). Following receipt of the respondent's report, the investigating deputy evaluates the material and:

"(1) Advise[s] the complainant of the action taken and disposition of his complaint;

(2) Pursue[s] further investigation with respondent or complainant; or

(3) Refer[s] the investigation report to the appropriate branch within the Department of Insurance for further regulatory action." 215 ILCS 125/4—6(d)(1) through (d)(3) (West 1994).

Here, plaintiff availed herself of her statutory right to file a complaint with the IDI against her HMO. Pursuant to the provisions of the Health Maintenance Organization Act, defendant filed a response, and the IDI conducted some type of investigation. Thereafter, the IDI advised plaintiff of the disposition of her complaint by issuing a one-page letter, signed by an "insurance analyst" with the HMO compliance unit. The letter states in relevant part that the IDI was closing its complaint file, as Access "appears to be within its contractual rights to deny Ms. O'Rourke's claim."

---

[2]Plaintiff's inquiry to the IDI and defendant's responsive letter are not a part of the record on appeal. Plaintiff, however, never asserts that the issues raised before the IDI are not identical to the issues raised before the trial court. Therefore, for purposes of considering the binding effect, if any, of the IDI's decision, we will assume identity of issues.

Defendant argues that the IDI's decision was made pursuant to its quasi-judicial powers and that plaintiff, having failed to seek review of the decision pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)) is now precluded from relitigating the same issues before the trial court. We disagree.

■ ■ The Illinois Insurance Code provides that the Administrative Review Law "shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Department [of Insurance]." 215 ILCS 5/407 (West 1994). "Administrative decision" is defined in relevant part as:

> "[A]ny decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 1994).

Thus, judicial review only occurs where there is a final agency determination. *Stracka v. Bradley*, 243 Ill. App. 3d 771, 774, 612 N.E.2d 1004 (1993). Such determinations contemplate an adversarial proceeding involving the parties, a hearing on the controverted facts, and an ultimate disposition rendered by an impartial fact finder. *Stracka*, 243 Ill. App. 3d at 774; *Board of Trustees of the Addison Fire Protection District No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 881, 608 N.E.2d 1274 (1993); *Sturm v. Block*, 72 Ill. App. 3d 306, 310-11, 390 N.E.2d 912 (1979). In the absence of a final administrative decision, the circuit court lacks jurisdiction to consider the matter. *Jagielnik v. Board of Trustees of the Police Pension Fund*, 211 Ill. App. 3d 26, 32, 569 N.E.2d 1293 (1991).

We note that the term "hearing" is appropriate to quasi-judicial proceedings and entitles the parties to be present, to participate, and to obtain records of the proceedings. *Roosevelt-Wabash Currency Exchange, Inc. v. Fornelli*, 49 Ill. App. 3d 896, 899, 364 N.E.2d 449 (1977). Significantly, section 4—6 of the Health Maintenance Organization Act does not require, or even authorize, a "hearing." Rather, it allows for "investigation" and possible referral for further regulatory action. 215 ILCS 125/4—6 (West 1994). The term "investigate" is appropriate to a nonjudicial function of an administrative agency. *Roosevelt-Wabash Currency Exchange*, 49 Ill. App. 3d at 899.

■ In accordance with the IDI's limited authority under the Health Maintenance Organization Act, no hearing preceded the IDI's determination of Mrs. O'Rourke's complaint. No findings of fact were made, no record was created, and no order issued. Rather, an insurance analyst with the IDI simply issued a one-page letter stating that it "appears" that Access was within its contractual rights in denying coverage.

We note further that the letter issued by the IDI does not indicate in any way that it is a final and appealable agency decision or that an appeal may be taken within a prescribed period of time. This court previously held that, under certain circumstances, notice of an administrative decision does not trigger the 35-day limitations period set forth in the Administrative Review Law (735 ILCS 5/3—103 (West 1994)) where the notice fails to inform the recipient of his or her right to appeal and the time for doing so. *Keller v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 245 Ill. App. 3d 48, 53, 614 N.E.2d 323 (1993). Although here we are not faced with a challenge to the timeliness of a complaint for administrative review, we nonetheless regard the absence of any language in the IDI's letter concerning appeal rights as a further indication that the letter was not intended to be a final and appealable agency determination.

The IDI's letter also does not purport to "affect[ ] the legal rights, duties or privileges of [the] parties." 735 ILCS 5/3—101 (West 1994). Unlike agency actions which revoke, suspend or deny some license or privilege, affect an entitlement to benefits, determine the applicability of certain rules or regulations, or seek to impose a duty on some party, here no such right or entitlement is affected and no duty created. Rather, the letter merely advised plaintiff that defendant had provided several sources from which it obtained information relative to its determination that the procedure was experimental, that the IDI had contacted the Federal Office of Technology Assessment and confirmed that the office views the procedure as experimental, and that, based on the exclusionary language in section 8.17, it was closing plaintiff's complaint file as "Access Health Plan appears to be within its contractual rights to deny Ms. O'Rourke's claim." In short, after an investigation, the details of which are largely undisclosed, an insurance analyst determined that no further agency action was warranted. Thus, even giving a liberal reading to the statutory definition of "administrative decision," the IDI's letter here simply does not qualify as one.

Defendant's reliance on *Parrillo, Weiss & Moss v. Cashion*, 181 Ill. App. 3d 920, 537 N.E.2d 851 (1989), for the proposition that the IDI was acting in its quasi-judicial capacity when it issued its October 24, 1990, determination is misplaced. In *Parrillo*, the court considered whether, in the context of a complaint alleging libel *per se*, a letter sent to the Director of the IDI was privileged. The court determined first that the IDI "possesses most of the powers that distinguish a quasi-judicial body from a body that is performing merely administrative functions." *Parrillo*, 181 Ill. App. 3d at 927. The court further determined that the letter at issue was a "preliminary step" to a

quasi-judicial proceeding and as such was privileged. *Parrillo*, 181 Ill. App. 3d at 928. Significantly, the court observed:

"An entity [such as the IDI] with quasi-judicial powers is not, as a matter of law, a quasi-judicial body at all times. At those times when it is not performing its quasi-judicial functions, or at those times when, purporting to perform those functions, it nevertheless fails to follow judicial procedures, it can be said that it is not acting as a quasi-judicial body." *Parrillo*, 181 Ill. App. 3d at 926, citing *Richardson v. Dunbar*, 95 Ill. App. 3d 254, 257, 419 N.E.2d 1205 (1981).

We agree with plaintiff that the IDI was not acting as a quasi-judicial body when it made its coverage determination, there being no evidence that "judicial procedures" were followed. Rather, it was acting only in its administrative capacity to determine whether the situation warranted further regulatory intervention by the IDI. Only agency determinations made in proceedings which are adjudicatory, judicial or quasi-judicial in nature have *res judicata* or collateral estoppel effect. *McCulla v. Industrial Comm'n*, 232 Ill. App. 3d 517, 520, 597 N.E.2d 875 (1992). Thus, the decision of the IDI, set forth in its October 24, 1990, letter, is not a bar to the plaintiff's cause of action and the trial court erred in dismissing count II on this basis.

## II

■ We next consider whether the court erred in its finding that the exclusion for "experimental procedures" contained in section 8.17 of the subscription agreement is unambiguous. An exclusionary clause will only be applied to deny coverage where its terms are clear, definite and explicit. *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 123 (1994). Any doubts with respect to coverage will be resolved in favor of the insured. *American Standard Insurance Co. v. Allstate Insurance Co.*, 210 Ill: App. 3d 443, 446, 569 N.E.2d 162 (1991).

Plaintiff argues that the exclusionary clause in the Access subscription agreement leaves doubt as to what procedures are to be used to determine whether a questioned medical procedure is experimental, and that where, as here, the insured's primary care physician approved of the procedure, the views of the Federal Office of Health Technology Assessment are completely irrelevant. The exclusionary clause provides:

"Procedures which are considered experimental by the ACCESS medical staff are not covered by ACCESS. In the event such procedures are deemed non-experimental by the Federal Office of Health Technology Assessment, the decision of the Federal Office of Health Technology Assessment will prevail."

In construing contracts of insurance, courts must examine the policy as a whole, giving effect, to the extent possible, to all contractual provisions. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 371, 522 N.E.2d 758 (1988). In so doing, the policy language will be interpreted according to its plain, ordinary and popular meaning. *International Minerals*, 168 Ill. App. 3d at 371; *Hartford Casualty Insurance Co. v. Medical Protective Co.*, 266 Ill. App. 3d 781, 788, 641 N.E.2d 545 (1994). Courts may not, under the cloak of construction, make a new contract for the parties by adopting a preferred interpretation contrary to the language of the policy. *Ansvar America Insurance Co. v. Hallberg*, 209 Ill. App. 3d 206, 211, 568 N.E.2d 77 (1991).

Here, the exclusionary clause explicitly vests the Access medical staff with the authority to determine whether a procedure is experimental. Although "Access medical staff" is not a defined term, the mere absence of a definition does not render the term ambiguous. *Milwaukee Guardian Insurance, Inc. v. Taraska*, 236 Ill. App. 3d 973, 974, 602 N.E.2d 70 (1992). Rather, a term in an insurance policy is ambiguous if, after considering the policy as a whole, it is subject to more than one reasonable interpretation. *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5 (1981). Moreover, the construction given the policy should be a natural and reasonable one. *Milwaukee Guardian Insurance*, 236 Ill. App. 3d at 974. Courts will not strain to find an ambiguity where none exists. *United States Fire Insurance Co.*, 88 Ill. 2d at 5.

The interpretation urged by plaintiff of the exclusionary provision at issue here is unreasonable and not supported by the plain language of the policy. In essence, plaintiff seeks to equate the term "Access medical staff" with all "Access-approved physicians." Plaintiff's interpretation ignores the clear difference between physicians actually on the staff of Access, such as Dr. Glen Tomlinson, its medical director, whom plaintiff petitioned for reconsideration of the denial of coverage, and physicians like Dr. Sauerberg, who are only Access-approved with respect to providing covered services. Plaintiff further seeks to write out of the contract the role of the Federal Office of Health Technology Assessment. Under plaintiff's strained interpretation of the exclusionary clause, Access would be obligated to provide coverage for *any* treatment, no matter how novel, untested and unproven, as long as some physician affiliated with Access was willing to call it nonexperimental. In essence, the exclusionary clause would be rendered meaningless.

Although it is a general rule that ambiguous language in a contract of insurance will be construed in favor of the insured, this

principle does not authorize the perversion of language to create an ambiguity where none otherwise exists. *State Farm Mutual Automobile Insurance Co. v. Byrne*, 156 Ill. App. 3d 1098, 1100, 510 N.E.2d 131 (1987). We find no ambiguity in the exclusionary clause in section 8.17 of the subscription agreement. This court must, therefore, apply the exclusion as written. *United States Fire Insurance Co.*, 88 Ill. 2d at 4. Accordingly, since the record before the trial court clearly demonstrates that the Access medical staff determined that the HDC/ABMT procedure was experimental, and that this determination was consistent with the position of the Federal Office of Health Technology Assessment, coverage for this procedure was properly denied. The fact that plaintiff's primary care physician and oncologist nonetheless recommended the treatment is not determinative of whether Access was obligated to pay for it.

■ Even if, as plaintiff argues, the exclusionary clause is subject to more than one reasonable interpretation and the HDC/ABMT procedure could be deemed nonexperimental, it is undisputed that the procedure was not performed by an Access-affiliated physician at an Access-affiliated facility. Such out-of-network services are excluded from coverage under section 8.1 of the subscription agreement with only two exceptions: (i) in a medical emergency, or (ii) as authorized by an Access primary care physician.

Accordingly, plaintiff argues that the HDC/ABMT procedure constitutes "emergency medical care." The language of the subscription agreement, however, does not support this conclusion. A "medical emergency" under the agreement means:

> "[A] condition, which if not immediately treated, would cause complications and jeopardize the patient's full recovery. Heart attacks, cerebrovascular accidents ('strokes'), poisonings, loss of consciousness, and convulsions are considered to be 'medical emergencies.'"

Similarly, "emergency" under the agreement, refers to "*sudden* onset of a medical condition." (Emphasis added.) As the trial court correctly observed, "Progressive treatment [as is present here] clearly cannot be a medical emergency under the terms of this policy."

Alternatively, plaintiff argues that Dr. Sauerberg, plaintiff's primary care physician, "recommended, approved, and referred" her to the out-of-network physicians and facilities, and thus her treatment is covered under the second exception contained in section 8.1 of the subscription agreement. Plaintiff's position is contradicted by Dr. Sauerberg's deposition testimony. Dr. Sauerberg clearly testified that when he stated in his affidavit, which was filed in response to defendant's motion to dismiss, that he "approved" of the procedure,

he meant only that he held an "opinion" as to this course of treatment. He "agreed" with the oncologist's recommendation. This agreement, however, was not accompanied by any action that could fairly be described as "authorizing" the HDC/ABMT. In fact, Dr. Sauerberg admitted that he never informed Mrs. O'Rourke that Access would pay for the bone marrow transplant.

Thus, contrary to plaintiff's claim, the HDC/ABMT procedure does not fall within either exception to the exclusionary clause found at section 8.1 of the subscription agreement. The trial court correctly construed the policy. We, therefore, affirm the trial court's dismissal of count I of plaintiff's complaint.

## III

As to count II, which seeks attorney fees pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 1994)), plaintiff asserts that the trial court erred in applying the two-year limitations period set forth in section 13—202 of the Code of Civil Procedure for actions for a statutory penalty (735 ILCS 5/13—202 (West 1994)). Plaintiff asserts that the 10-year limitations period for actions on a written contract should apply. 735 ILCS 5/13—206·(West 1994). However, this court need not reach this issue.

■ Plaintiff never alleged that defendant could be liable for section 155 relief even if defendant was not liable under the policy. Thus, it follows that defendant could not have committed the vexatious and unreasonable conduct necessary for section 155 relief where, as here, no benefits are owed. *Weeks v. Aetna Insurance Co.*, 150 Ill. App. 3d 90, 93, 501 N.E.2d 349 (1986).

Further, defendant's assertion of a legitimate policy defense, supported by appropriate authority, cannot be considered vexatious and unreasonable. *State Farm Fire & Casualty Insurance Co. v. Miceli*, 164 Ill. App. 3d 874, 883, 518 N.E.2d 357 (1987); *Herrera v. Benefit Trust Life Insurance Co.*, 126 Ill. App. 3d 355, 361, 466 N.E.2d 1172 (1984). See also *Hermitage Insurance Co. v. Action Marine, Inc.*, 816 F. Supp. 1280 (N.D. Ill. 1993) (claim for bad faith and vexatious conduct cannot be maintained where insurer rightfully refuses coverage under policy exclusion). Access asserted a plausible and ultimately successful policy defense. Its conduct, under the circumstances, cannot be unreasonable and vexatious. We, therefore, affirm the trial court's dismissal of count II.

## IV

■ Finally, we consider whether defendant is equitably estopped to deny coverage. Plaintiff, having failed to raise this issue before the trial court, has waived this matter on appeal. *Wagner v. City of*

*Chicago*, 166 Ill. 2d 144, 147 (1995). However, even if the issue was timely raised, we find no merit in plaintiff's argument. Equitable estoppel may only be invoked where plaintiff pleads and proves the following elements:

> "(1) words or conduct by the party against whom the estoppel is alleged constituting either a misrepresentation or concealment of material facts; (2) knowledge on the part of the party against whom the estoppel is alleged that representations made were untrue; (3) the party claiming the benefit of an estoppel must have not known the representations to be false either at the time they were made or at the time they were acted upon; (4) the party estopped must either intend or expect that his conduct or representations will be acted upon by the party asserting the estoppel; (5) the party seeking the benefit of the estoppel must have relied or acted upon the representations; and (6) the party claiming the benefit of the estoppel must be in a position of prejudice if the party against whom the estoppel is alleged is permitted to deny the truth of the representations made." *Anane v. Pettibone Corp.*, 203 Ill. App. 3d 121, 126-27, 560 N.E.2d 1088 (1990).

Here, plaintiff has not satisfied even the first requirement. In her complaint, plaintiff alleges no misrepresentation or concealment of fact. Rather, plaintiff concedes that Access denied her initial request for precertification of the HDC/ABMT procedure and similarly denied two subsequent requests for coverage. Rather than demonstrating a concealment, these allegations are consistent with the record before this court that Access advised plaintiff of its denial of coverage, consistently maintained that position, and repeatedly so advised plaintiff. Thus, we need not further consider plaintiff's estoppel argument.

## CONCLUSION

For each and all of the foregoing reasons, the order of the trial court dismissing plaintiff's complaint with prejudice is affirmed.

Affirmed.

GORDON and COUSINS, JJ., concur.